# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1850V
UNPUBLISHED

| | |
|---|---|
| DEBRA J. MOORE,<br><br>        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>        Respondent. | Chief Special Master Corcoran<br><br>Filed: February 25, 2022<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Richard H. Moeller*, Moore, Heffernan, et al., Sioux City, IA, for Petitioner.

*Colleen Clemons Hartley*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On December 6, 2019, Debra J. Moore filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on October 5, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters, and although Respondent conceded entitlement, the parties could not informally resolve damages.

The parties' damages disagreement was submitted for a Motions Day argument. For the reasons discussed below, and pursuant to my oral ruling on February 18, 2022

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

(which is fully adopted herein), I find that **$115,000.00** represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.

## I.     Relevant Procedural History

Approximately 17 months after this case was initiated, Respondent filed a Rule 4(c) Report on May 17, 2021, conceding that Petitioner was entitled to compensation. ECF No. 31. I thereafter issued a ruling on entitlement and directed the parties to work collaboratively towards resolving damages. ECF Nos. 32-33.

In September 2021, the parties reached an impasse in their discussions. ECF No. 37. Accordingly, I set a schedule for any additional evidence and briefing. Scheduling Order entered October 19, 2021; ECF No. 38. Petitioner filed her brief on November 18, 2021, requesting that I award her $140,000.00 in compensation for past pain and suffering. ECF No. 39. On January 19, 2022, Respondent countered that Petitioner's evidence and a comparison to other conceded cases supported a pain and suffering award of no more than $87,500.00. ECF No. 41. Petitioner's reply brief was filed on February 2, 2022. ECF No. 44.

In January 2022, I informed the parties that this matter appeared to be appropriate for an expedited hearing and ruling, and they accepted my proposal. Scheduling Order entered January 20, 2022; ECF Nos. 42-43. Therefore, at the February 2022 Motions Day, I heard oral argument and issued a bench ruling on the appropriate award of pain and suffering, which is memorialized below.[3]

## II.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of the judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health &*

---

[3] *See* Hearing Order filed January 27, 2022 (Non-PDF); Minute Entry entered February 23, 2022 (Non-PDF). A court reporter made an official recording of the proceeding. A link to instructions on the Court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entry. *See also* www.uscfc.uscourts.gov/trans (last visited February 23, 2022).

*Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### III. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of her injury is not disputed, which leaves only the severity and duration of the injury to be considered. In assessing those factors, I have reviewed the record as a whole, including the medical records, affidavit, and all assertions made by the parties in written documents and at the expedited hearing held on February 18, 2022. I considered prior awards for pain and suffering in both SPU and non-SPU

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

3

SIRVA cases and rely upon my experience adjudicating these cases. However, I ultimately base my determination on the specific circumstances of this case.

Pursuant to my oral ruling on February 18, 2022 (which is fully incorporated herein), **I find that $115,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering.**[5] My determination is based on several factors.

First, the record establishes that Petitioner's shoulder pain was not extreme. Although Petitioner sought treatment for her shoulder injury on October 15, 2018 (only ten days after her October 5, 2018 vaccination), she reported "aching and burning *moderate* in nature" and also noted only "pain with any manipulation of her shoulder" leading her orthopedist to recommend that she perform light range of motion exercises on her own. Ex. 3 at 22-24. Over the next month, Petitioner underwent conservative treatment for her shoulder that included six sessions of physical therapy and one cortisone injection. Ex. 3 at 27-28; Ex. 4 at 1-13.

Subsequently, there is an approximate four-month gap in Petitioner's shoulder treatment during which time she underwent a breast reduction and excision of excess arm skin. She was seen by various medical professionals during this period, and did not complain of shoulder pain. *See* Ex. 2 at 8-84; Ex. 7 at 1-76; Ex. 11 at 7-8, 27-31. While I acknowledge that an individual would not be expected to report every bodily condition to specialized treaters, the gap in seeking treatment specific to Petitioner's shoulder is otherwise meaningful evidence bearing on severity (as explained below in greater detail).

Second, Petitioner's medical records establish that her overall injury was somewhat moderate, for a case involving surgery. Petitioner's reports of pain never exceeded a three on a ten-point pain scale. After the four-month lull in treatment, Petitioner submitted to an MRI and, on May 31, 2019 (nearly eight months after her flu shot), underwent arthroscopic debridement, a subacromial bursectomy and mini-open rotator cuff repair. Ex. 3 at 40-49. Her postoperative diagnosis included left shoulder rotator cuff tear, left shoulder labral tear, and left shoulder subacromial bursitis. *Id.* at 46.

Following her shoulder surgery, Petitioner underwent an additional 24 physical therapy sessions. Ex. 4 at 12-50. On August 26, 2019 – approximately three months after surgery – Petitioner informed her physical therapist that her left shoulder was "great." Ex. 14 at 28. On December 30, 2019, the date of Petitioner's last orthopedic appointment,

---

[5] Petitioner has not sought an award for future pain and suffering, and I do not otherwise find one would be appropriate.

her physician observed that she was "doing well" and noted her report of improvement. Ex. 14 at 13. However, while Petitioner exhibited full strength in her supraspinatus, infraspinatus, and subscapularis and had full range of motion in forward elevation and abduction, her internal rotation was "limited due to pain." *Id.*

Although I find that the duration of Petitioner's injury was approximately 15 months, my award for pain and suffering has nevertheless accounted for the four-month treatment gap. Such pauses are a relevant consideration in determining the degree of Petitioner's pain and suffering. *Dirksen v. Sec'y of Health & Hum. Servs.*, No. 16-1461V, 2018 WL 6293201, at *9-10 (Fed. Cl. Spec. Mstr. Oct. 18, 2018). Petitioner asserts that this gap occurred when she underwent breast reduction surgery and surgical excision of excess skin under her arms. She further explains that, in the immediate aftermath of these procedures, she "didn't use her arms that much and it seemed like her shoulder was improving." Ex. 4 at 14. Moreover, Petitioner argues that it would be unreasonable to equate the failure to report shoulder pain (during the course of wholly unrelated medical appointments) with the complete abatement of pain. While these are not unreasonable points, the fact that she was able to tolerate her pain and other limitations for this period of time without medical care tends to suggest that her overall injury was less severe than what a person who sought constant intervention might be experiencing.

In making my determination, I have also considered Petitioner's affidavit which details the limitations in her activities of daily living due to her shoulder injury. Ex. 1 at 3-4. While Petitioner describes suffering from ongoing impediments as a result of her injury, I find that she was significantly – thought not completely – recovered by her last orthopedic appointment on December 30, 2019.

Petitioner argues that her case is comparable to the *Collado*, *Dobbins*, *Rafferty*, and *Wilson* cases, which resulted in awards ranging from $120,00.00 to $130,000.00 for past pain and suffering. But she requests a higher award, arguing that her injury was more severe, and that she has endured a longer period of recovery.[6] I do not find the facts of her case justify such an award, however. Rather, I find that the present set of facts is more comparable to the *Weed* case (cited by Respondent), where an award of $105,000.00 was granted under similar circumstances. *Weed v. Sec'y of Health & Human Servs.,* No. 18-1473, 2021 WL 1711800 (Fed. Cl. Mar. 30, 2021). While the *Weed*

---

[6] *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. June 6, 2018)(awarding $120,000 for pain and suffering); *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Aug. 15, 2018) (awarding $125,000 for pain and suffering); *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020)(awarding $127,500.00 for pain and suffering); *Wilson v. Sec'y of Health & Human Servs.*, No. 19-0035V, 2021 WL 1530731 (Fed. Cl. Spec. Mstr. March 18, 2021)(awarding $130,000.00 for pain and suffering).

petitioner's initial post-vaccination symptoms were severe and her MRI revealed significant pathology, her post-surgical recovery (beginning less than two months post-vaccination) was relatively quick. After four months, the *Weed* petitioner was generally noted to have only mild levels of pain and was largely recovered ten months after her flu shot. However, because the record herein establishes that magnitude of Petitioner's injury was slightly greater, I will approve a somewhat higher pain and suffering award.

### IV. Conclusion

Based on the record as a whole and the parties' arguments, I award Petitioner a lump sum payment of **$115,000.00 for actual pain and suffering.** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this decision.[7]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.